Office of the Attorney General · State of Texas



December 15, 2000

Mr. C. Tom Clowe, Jr.
Chair
Texas Lottery Commission
P.O. Box 16630
Austin, Texas 78761-6630

Opinion No. JC-0315

Re: Whether the Texas Lottery Commission may count a lottery vendor's contracts with a broker or "pass-through" entity toward the vendor's good faith historically underutilized business participation goal (RQ-0247-JC)

Dear Mr. Clowe:

On behalf of the Texas Lottery Commission (the "Commission"), you ask whether the Commission may count a lottery vendor's contracts with a broker or "pass-through" entity toward the vendor's good faith historically underutilized business ("HUB") participation goal. We conclude that the Commission may do so.

We understand that your question arises from the contract award for the Commission's instant tickets and services.[1] Apparently, the Commission's instant ticket vendor "requested clarification of the steps it may take in fulfilling its requirement to make a good faith effort to include HUBs . . . as subcontractors and suppliers in connection with its contract with the Commission." Commission Letter of 10/13/00, note 1, at 1. You ask about the permissibility of the following arrangement:

> The Commission enters into a contract with a vendor who provides goods and/or services to the Commission. The Commission establishes a good faith minority business or Historically Underutilized Business ("HUB") participation goal for the vendor. The vendor enters into a contract with a minority business or HUB to provide goods and/or services in connection with the contract the vendor has with the Commission. The minority business or HUB is a supplier or broker of goods to the Commission's vendor. Such goods are used by the Commission's vendor in connection with providing the goods and/or services to the Commission. The

---

[1]*See* Letter from Kimberly L. Kiplin, General Counsel, Texas Lottery Commission, to Susan D. Gusky, Chair, Opinion Committee, Office of the Attorney General (Oct. 13, 2000) (on file with Opinion Committee) [hereinafter Commission Letter of 10/13/00].

minority business or HUB purchases or obtains all or part of the goods provided to the Commission's vendor from a non-minority business or non-HUB entity. The Commission's vendor counts the dollars it pays to the minority business or HUB toward its good faith minority or HUB participation goal.[2]

You ask whether counting a lottery vendor's contracts with a broker or "pass-through" entity toward the vendor's good faith HUB participation goal is permissible under chapters 466 and 2161 of the Government Code and section 9-9.03 of the General Appropriations Act. *See* Request Letter, note 2, at 1.

Before turning to your specific questions, we briefly review the statutory framework. Procurement for the state lottery is generally governed by subchapter C of chapter 466, the State Lottery Act. That subchapter includes a provision, section 466.107, which requires the executive director of the Lottery Commission and each lottery operator to "take positive steps" to encourage minority business participation, including "award[ing] contracts for lottery equipment or supplies to minority businesses when possible" and "requir[ing] all bidders or contractors, when appropriate, to include specific plans or arrangements to use subcontracts with minority businesses." TEX. GOV'T CODE ANN. § 466.107(a)(3), (7) (Vernon 1998). Section 466.107 includes as "minority group members" African Americans, American Indians, Asian Americans, Mexican Americans, and other Americans of Hispanic origin; women are not included. *See id.* § 466.107(b)(2).

On the other hand, under chapter 2161 of the Government Code, which generally governs state agency contracts with historically underutilized businesses, a historically underutilized business is one owned, or owned in part, by an "economically disadvantaged person." It provides that:

> "[e]conomically disadvantaged person" means a person who is economically disadvantaged because of the person's identification as a member of a certain group, including Black Americans, Hispanic Americans, women, Asian Pacific Americans, and Native Americans, and who has suffered the effects of discriminatory practices or other similar insidious circumstances over which the person has no control.

*Id.* § 2161.001(3) (Vernon 2000). Chapter 2161 authorizes the General Services Commission to adopt implementing rules, to certify HUBs, and to encourage state agencies to use HUBs. *See id.* §§ 2161.002, .061, .063. A state agency is required to "make a good faith effort to increase the contract awards for the purchase of goods or services that the agency expects to make during a fiscal year" to HUBs based on the rules adopted by the General Services Commission. *Id.* § 2161.181. The other provision you ask about, section 9-9.03 of the General Appropriations Act, expresses the legislature's "intent" with respect to HUB participation in state contracts. *See*

---

[2]Letter from Mr. C. Tom Clowe, Jr., Chair, Texas Lottery Commission, to Honorable John Cornyn, Texas Attorney General at 1 (June 14, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

General Appropriations Act, 76th Leg., R.S., ch. 1589, art. IX, § 9-9.03, 1999 Tex. Gen. Laws 5446, 6309-11. It is generally redundant of chapter 2161, and we do not discuss it separately.

Before addressing your specific questions, we must address whether the Lottery Commission's lottery contracts are governed by the minority business participation provisions of section 466.107 or the HUB contracting provisions generally applicable to all state agencies. Chapter 2161 of the Government Code is located in subtitle D of title 10 of the Government Code. Section 466.105 of the Government Code, a provision of the State Lottery Act specifically governing contracts of the Commission, provides that a contract for "the acquisition or provision of facilities, supplies, equipment, materials, or services related to the operation of the lottery" is not subject to subtitle D, title 10 of the Government Code. *See* TEX. GOV'T CODE ANN. § 466.105(a)(2) (Vernon Supp. 2000). The Lottery Commission's general counsel informs us that the contract at issue falls within this exemption. *See* Commission Letter of 10/13/00, *supra* note 1, at 2. However, section 2161.003 of the Government Code requires a state agency to adopt the General Services Commission's rules regarding historically underutilized businesses and provides that those rules apply to the agency's "purchases of goods and services paid for with appropriated money without regard to whether a . . . purchase is otherwise subject to this subtitle." TEX. GOV'T CODE ANN. § 2161.003 (Vernon 2000). In addition, section 2161.004 provides that chapter 2161 and the General Services Commission's rules "apply to state agency . . . purchases of goods and services that are paid for with appropriated money and made under the authority of this subtitle or other law." *Id.* § 2161.004. The general counsel also informs us that the contract at issue was paid for with appropriated money. *See* Commission Letter of 10/13/00, *supra* note 1, at 2.

With respect to minority or HUB participation in Lottery Commission lottery contracts paid with appropriated funds, chapters 466 and 2161 of the Government Code conflict. Chapter 466 of the Government Code provides its own minority participation provisions for lottery contracts, which are much less detailed and comprehensive than the chapter 2161 provisions and do not extend to women-owned businesses, and generally exempts the Lottery Commission from all of subtitle D, title 10 of the Government Code, including chapter 2161. On the other hand, sections 2161.003 and 2161.004 of chapter 2161 mandate that all state agencies adopt the rules promulgated by the General Services Commission under section 2161.002 and apply those rules and chapter 2161 to purchases paid for with appropriated money without regard to whether a purchase is otherwise subject to subtitle D. *See* TEX. GOV'T CODE ANN. §§ 2161.003, .004 (Vernon 2000).

We conclude that sections 2161.003 and 2161.004 prevail. Under the Code Construction Act, "if statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails." *Id.* § 311.025(a) (Vernon 1998). Section 466.107, the minority business participation provision for state lottery contracts dates from 1991, as does section 466.105, the provision exempting lottery contracts from subtitle D, title 10.[3] The legislature adopted

---

[3]*See* Act of Aug. 13, 1991, 72d Leg., 1st C.S., ch. 6, § 2, secs. 2.04, 2.06, 1991 Tex. Gen. Laws 197, 201, 203.

sections 2161.003 and 2161.004 in 1999.[4]  Because sections 2161.003 and 2161.004 are the later enacted provisions, we conclude that they prevail.  In addition, the Code Construction Act generally provides that a more specific provision will prevail as an exception to a general provision "unless the general provision is the later enactment and the manifest intent is that the general provision prevail." *Id.* § 311.026(b).  Although section 466.107 is more specific to the Lottery Commission and lottery contracts, we believe that sections 2161.003 and 2161.004, later-enacted general provisions, manifest the legislature's intent that they prevail. *See id.* §§ 2161.003 (mandating that General Services Commission rules apply to an agency's "purchases of goods and services paid for with appropriated money *without regard to whether a . . . purchase is otherwise subject to this subtitle*") (emphasis added); .004(a) ("This chapter and rules adopted by the commission under this chapter apply to state agency construction projects and purchases of goods and services that are paid for with appropriated money and made under the authority of this subtitle *or other law.*") (emphasis added), (c) (excepting only project or contract under section 201.702 of the Transportation Code from section 2161.003 and subsections (a) and (b) of section 2161.004).

The Commission has promulgated a rule adopting the General Services Commission's rules as its own rules, as required by section 2161.003. *See* Commission Letter of 10/13/00, *supra* note 1, at 3; *see also* 25 Tex. Reg. 7300, *adopted* 25 Tex. Reg. 9954 (2000) (to be codified at 16 TEX. ADMIN. CODE § 403.301).  We assume that the contract at issue is governed by the Commission's rule, which became effective October 2, 2000.  Accordingly, we conclude that your questions are governed by the General Services Commission rules adopted by the Lottery Commission as required by section 2161.003.

The General Services Commission rules adopted by the Lottery Commission, sections 111.11 through 111.28 of title 1 of the Texas Administrative Code, provide that:

> [i]t is the policy of the commission to encourage the use of historically underutilized businesses (HUBs) by state agencies and to assist agencies in the implementation of this policy through race, ethnic, and gender-neutral means.  The purpose of this program is to promote full and equal business opportunities for all businesses in state contracting in accordance with the goals specified in the State of Texas Disparity Study.

25 Tex. Reg. 3232-35 (2000) (to be codified as an amendment to 1 TEX. ADMIN. CODE § 111.11). The rules establish criteria for HUBs, require state agencies to make a good faith effort to utilize HUBs in contracts, and provide that agencies may achieve goals by contracting directly with HUBs or indirectly through subcontracting opportunities. *See* 25 Tex. Reg. 3119-21, *adopted* 25 Tex. Reg. 5621 (2000) (to be codified as an amendment to 1 TEX. ADMIN. CODE § 111.12); 25 Tex. Reg. 3232-35 (2000) (to be codified as an amendment to 1 TEX. ADMIN. CODE 111.13).

---

[4]*See* Act of May 30, 1999, 76th Leg., R.S., ch. 1499, § 1.23, 1999 Tex. Gen. Laws 5164, 5169.

We now turn to your specific questions. First, you ask "[w]hether . . . purchases made [by the vendor] through a minority business or HUB 'pass-through' entity or broker [may] be counted toward the [vendor's] good faith minority business participation goal." Request Letter, *supra* note 2, at 1. We conclude that the General Services Commission rules permit the Lottery Commission to count purchases made through a HUB "pass-through" entity or broker toward a vendor's good faith HUB participation goal. Nothing in the rules prohibits the use of a "pass through" entity or broker. Indeed, the rules specifically embrace subcontracts, providing that agencies may achieve goals by contracting directly with HUBs or indirectly through subcontracting opportunities. *See* 25 Tex. Reg. 3232-36 (2000) (to be codified as an amendment to 1 TEX. ADMIN. CODE §§ 111.13, .14). Furthermore, the rules define the term "HUB" quite broadly, as a business a certain percentage of which is owned by a person or persons who have been "economically disadvantaged because of their identification as members" of certain groups. *See* 25 Tex. Reg. 3119-21, *adopted* 25 Tex. Reg. 5621 (2000) (to be codified as an amendment to 1 TEX. ADMIN. CODE § 111.12(11)(A), (B)). The business may be a corporation, sole proprietorship, partnership, joint venture, or a supplier contract in which the HUB supplier is directly involved in the manufacture or distribution of the supplies or materials or otherwise warehouses and ships the supplies. *See id.* (to be codified as an amendment to 1 TEX. ADMIN. CODE § 111.12(11)(C)-(G)). Even more generally, the business may be one "which is formed for the purpose of making a profit and is otherwise a legally recognized business organization under the laws of the State of Texas." *Id.* (to be codified as an amendment to 1 TEX. ADMIN. CODE § 111.12(11)(H)). Although we cannot determine whether a particular business meets any of these criteria, we believe that a "pass-through" entity or broker could qualify as a historically underutilized business as that term is defined in the General Services Commission rules.

If we conclude that purchases made through a HUB "pass-through" entity or broker may be counted toward a vendor's good faith HUB goal, you also ask whether "the amount to be counted toward the goal [is] the total amount of goods and services purchased from the non-minority manufacturer through the . . . HUB 'pass-through' entity or broker or the amount actually retained by the minority or HUB 'pass-through' entity or broker for its services." Request Letter, *supra* note 2, at 2. The General Services Commission rules do not address this issue, nor does any other rule, statute, or legal opinion of which we are aware. In the absence of any controlling law, we believe your question is a policy question, rather than a legal question within the purview of an attorney general opinion. The legislature, by authorizing the General Services Commission to promulgate HUB contracting rules, to require information from state agencies regarding their HUB contracts, to certify HUBs, and to assist state agencies in using HUBs, *see* TEX. GOV'T CODE ANN. §§ 2161.002, .061, .063 (Vernon 2000), has vested the General Services Commission with the authority to implement state law and make policy in this area. Accordingly, we suggest that the Lottery Commission seek the advice of the General Services Commission with respect to this question.

## S U M M A R Y

The Texas Lottery Commission may count a lottery vendor's contracts with a broker or "pass-through" entity toward the vendor's good faith historically underutilized business participation goal.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General - Opinion Committee